**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**AMERICAN NATIONAL INSURANCE COMPANY,**

**Plaintiff,**

**v.**

**RBS CITIZENS, N.A. and CITIZENS AUTOMOBILE FINANCE, INC.,**

**Defendants.**

**MISC 08 70 S**

**C.A. No.:**

**(In re: Subpoenas issued to RBS Citizens, NA, Citizens Auto Finance – Rhode Island, Citizens Auto Finance – Sacramento, Great Bank, and Charter One Auto Finance in C.A. No. 3:05-CV-100-CDL, now pending in U.S. District Court for the Middle District of Georgia)**

**REQUEST FOR EXPEDITED HEARING**

## AMERICAN NATIONAL INSURANCE COMPANY'S MOTION TO COMPEL AND REQUEST FOR EXPEDITED HEARING

American National Insurance Company ("American National") files this Motion to Compel pursuant to Federal Rule of Civil Procedure 45 and Local Rule 9 to immediately enforce the subpoenas issued to RBS Citizens, N.A. and Citizens Automobile Finance (f/k/a Citizens Auto Finance, Inc. (collectively, "RBS") for the production of information, documents and tangible things. As discussed more fully below, American National hereby requests an expedited hearing because it needs to provide notice to all potential class members in time for a December 3, 2008 class fairness hearing in the Middle District of Georgia.

## BACKGROUND

American National is a Texas life insurance company, and the defendant in the lawsuit styled as *Perkins v. American National Insurance Company*, C.A. No. 3:05-CV-100-CDE, currently pending in the United States District Court for the Middle District of Georgia (the

"*Perkins* Case"). Among the products sold by American National are credit life and credit disability insurance policies. In the *Perkins* Case, a putative class of credit life and credit disability insurance policyholders (the "Class") sued American National. The Class alleged American National failed to refund unearned premium payments on policies in effect from October 7, 1999 to May 15, 2007.[1] Judge Clay D. Land of the United States District Court for the Middle District of Georgia entered an order preliminarily certifying the *Perkins* Class in order to facilitate settlement. *See generally* Exhibit 1 (May 16, 2007 order preliminarily certifying settlement). The class definition for settlement purposes is:

> all persons who purchased single premium credit life and/or credit disability insurance issued by ANICO[[2]] in the United States whose policies (a) were in effect and entered into ANICO's LOGIC system[] at any time between October 7, 1999, and the date that the Court enters an Order Preliminarily Approving the Class Action Settlement of this Action ("Preliminary Approval Order")' and (b) whose insured indebtedness was extinguished prior to its scheduled termination while the insurance was in effect; and (c) who have not received a refund of any unearned premium. Excluded from the Class are those persons who received a refund of unearned premium: (1) in the ordinary course of ANICO's business or (2) pursuant to the final executed Assurance of Voluntary Compliance ("AVC") with the Attorney General of the State of Texas and attached to the Settlement Agreement as Exhibit A.

Exhibit 1 at 3 (dated 5/16/07).

Importantly, American National recognizes that the company was often not provided notice of early termination by the lenders, dealerships or the insureds. Consequently, American National has no way of knowing about these terminations without asking for information from

---

[1] The credit life and credit disability policy is issued at the time of purchase. For example, when purchasing a vehicle through a loan, a new policyholder would pay their entire premium for the credit policy that insures the payment of the loan from loss due to disability or death. If the policyholder pays $100.00 for the policy and finances their car with a 48-month loan, then essentially what they are buying is protection for that entire 48-month term. If the policyholder pays off their car loan in 24 months, instead of 48, they could possibly be entitled to a refund of the premium.

[2] ANICO is an abbreviation used for American National.

one of these sources. American National seeks information from RBS as a direct result of efficiently correcting the notice problem.

American National is not starting its efforts with RBS. As a first step in identifying the policyholders to whom money is due under the settlement agreement, American National spent more than five months reviewing over two million of its hard-copy policies that were in effect during the class period, just to compile the lists of dealerships and lenders involved in the loans. American National completed that step in late 2007. Next, the company sought outstanding lender and policyholder information from dealerships. American National now seeks information from lenders that were beneficiaries under the policies at issue in *Perkins* for the purpose of determining which policies were terminated early without notice being provided to American National.

## ARGUMENT

Simply stated, American National seeks (1) loan termination dates, (2) whether or not the lender made a premium refund, (3) the reason for the termination and (4) any updated policyholder information on policyholders that American National believes was a customer of RBS.[3] The *Perkins* court has ordered American National to collect information on its insureds from its producers, agents and their assigns, and from any creditor who benefited from American National policies that are the subject of the *Perkins* suit. See the May 16, 2007 Order Concerning The Collection of Information Regarding ANICO Insured attached hereto as Exhibit 2. Lenders in particular should have this key piece of information never provided to American National—the date a loan that was subject to a credit life and/or disability insurance policy was

[3] In some instances, one bank may have acquired another and the loan paper along with it. American National has traced the trail of those acquisitions and asked for the information from the acquiring bank, where possible.

terminated, and if that termination was early. Without this information, the parties cannot resolve the *Perkins* matter.

RBS financed certain Class members' purchases and was a beneficiary of American National policies. RBS did not inform American National of policyholder loan termination dates as they occurred, so that American National could not assess whether the refund of unearned premium was due to an insured. The RBS entities are "lenders" under the March 17, 2008 Data Collection Order (See March 17, 2008, Order Authorizing Methods of Data Collection and Protective Order for Confidential Information attached hereto as Exhibit 3 at 2) and "creditors" under the May 16, 2007 order (Exhibit 2 at 2), and RBS is therefore subject to the requirements of those orders. Moreover, RBS was a beneficiary of the policies in question.

**AMERICAN NATIONAL'S REQUEST**

Pursuant to Federal Rule of Civil Procedure 45, American National served subpoenas upon RBS. Specifically, American National served subpoenas on the following dates to RBS:

| | | |
|---|---|---|
| RBS Citizens, NA | Served April 4, 2008 | 1833 Accounts |
| Citizens Auto Finance—Rhode Island | Served April 4, 2008 | 93 Accounts |
| Citizens Auto Finance—Sacramento | Served April 4, 2008 | 3918 Accounts |
| Great Bank | Served March 28, 2008 | 114 Accounts |
| Charter One Auto Finance (served by two subpoenas) | Served May 29, 2008 | 312 Accounts |
| | Served April 9, 2008 | 1147 Accounts |

(See true and correct copies of the subpoenas served upon the RBS entities attached hereto as Exhibit 4). American National has requested information on approximately 7400 policyholders from RBS. The form and content of the subpoena was prescribed by Judge Clay D. Land of the United States District Court for the Middle District of Georgia in that Court's March 17, 2008, Order Authorizing Methods of Data Collection and Protective Order for Confidential Information. Exhibit 3. In issuing this Order, Judge Land found that the *Perkins* parties "require information from numerous Agents and Lenders located throughout the United States" and that

"it is necessary to standardize the methods" for producing this information. *Id.* Therefore, American National has been ordered to provide lenders and agents with three alternative methods of producing information in compliance with the *Perkins* court's May 16, 2007 order: (1) by entering policyholder information into a secure Web site, (2) by downloading a spreadsheet of policyholder information and comparing that information electronically with their own records and resubmitting to American National, or (3) by writing in the missing information and mailing that paper to American National. *Id.* at 3-4. The *Perkins* court specifically found that the method best designed to avoid undue burden or expense was the first method, by using Web site entries. *Id.*

American National's subpoena is narrowly tailored to seek information necessary to identify policyholders entitled to a refund as part of the Class suit in *Perkins*. Its form and content have been prescribed by a federal district court in Georgia. RBS is a main repository for the subpoenaed information. The release of this information is for the purpose of benefiting its clients by determining whether they are owed a refund. Any burden that RBS may suffer in responding to the subpoena is (1) not undue and, (2) at least partly caused by RBS due to its failure to notify American National that loans had terminated early. Having the lender respond for approximately 7400 policyholders is more efficient than having the policyholders respond individually; this is particularly true where lenders can use American National's electronic information to make comparisons with its own electronic data. Moreover, the most likely result of going to 7400 policyholders is that RBS will receive that many separate requests for loan termination date information which will in turn have to be provided to American National.

Federal Rule of Civil Procedure 45(c) requires American National to take reasonable steps to avoid imposing undue burden or expense on RBS. American National has gone to great

lengths to minimize any burden in the production of information (i.e., by first reviewing its own policy files, making requests to over 3000 dealerships across the country, providing information on named policyholders to the lender or agent, by providing three separate methods for compliance, by creating a website for responses and creating a live data center to assist with technical questions). After all that American National has done, RBS cannot meet its "heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive." *Paul v. Stewart Enter., Inc.*, No. 99-3441, 2000 WL 1597935 (E.D. La Oct. 26, 2000) (citing *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D.Tex.1998); *Linder v. Dept. of Defense*, 133 F.3d 17, 24 (D.C.Cir.1998)). There simply is no undue burden to RBS in this matter. *See Wiwa v. Royal Dutch Petroleum*, 392 F.3d 812, 818 (5th Cir. 2004) (citing *Linder v. Dept. of Defense*, 133 F3d 17, 24 (D.C. Cir. 1998)); *Concord Boat Corp. v. Brunswick Corp*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996). Therefore, no sanction under Rule 45(c)(1) is available to RBS. Moreover, RBS has not provided any argument or showing that the requested information is not reasonably accessible as required under Federal Rule of Civil Procedure 26(b)(2)(B).

**RESPONSE TO AMERICAN NATIONAL'S SUBPOENA**

On May 7, 2008, Mr. Kenneth Urwiller, on behalf of RBS Citizens, N.A., sent a letter objecting to that subpoena as follows:

(1) To the extent the request seeks documents protected under the attorney-client, work product, or another privilege;
(2) The request is overbroad and unduly burdensome, do not provide sufficient identifying information, and seeks documents obtainable through party discovery;
(3) To the extent irrelevant information is being sought; and
(4) To the extent the request seeks confidential or proprietary information.

A true copy of Urwiller's May 7, 2008 letter is attached hereto as Exhibit 5. RBS has objected to the production of "confidential information." The *Perkins* court has already issued a protective order covering information produced in this case. See Exhibit 3.

The bulk of American National's subpoenas were served upon RBS in early April of this year. Despite repeated attempts to contact RBS and Mr. Urwiller, and despite informing RBS about the assistance available to it through American National's data retrieval center's on-call staff, and the electronic spreadsheets of information that this staff can provide to RBS, RBS failed to make any contact with this center and failed to download any spreadsheet until July 15, 2008—more than three months after the subpoenas were served. For the first time on July 31, 2008, RBS has informed American National that it requires two additional months to comply. Unfortunately, American National does not have two additional months, pursuant schedules set in the *Perkins* matter, to wait for this information. Specifically, the class fairness hearing in the Perkins matter has already been extended to December 3, 2008, and the necessary internal deadlines that American National must meet in order to be prepared for that hearing mandate that responsive information must be received by American National prior to August 25, 2008, so that the information may be processed and calculations of unearned premiums due to class members may be made. These internal deadlines are by no means arbitrary or flexible-quite the contrary, they have been reviewed and set by the settlement coordinator appointed to review the Perkins class settlement process.

Moreover, if RBS has ready access to at least part of the responsive information, it can provide that information immediately to American National while it makes efforts to retrieve any archived information. American National will reimburse RBS for the reasonable costs associated with production. Despite the attached orders and American National's efforts to accommodate the objections posed, RBS claims it cannot comply with the subpoena any sooner than September 30, 2008, and it is not sure if it can even be complied with by that date.

On or about May 12, 2008, July 22, 2008, July 31, 2008 and August 6, 2008 counsel for American National conferred with Kenneth Urwiller in a good-faith effort to resolve this dispute without court intervention. Attached are letters sent by counsel for American National to Kenneth Urwiller, in an attempt to communicate regarding RBS' compliance efforts. Exhibit 6.[4]

## CONCLUSION

For the foregoing reasons, American National respectfully requests the Court to compel RBS to fully respond to the subpoena within fourteen (14) days of the date of the Court's order on this Motion.

Respectfully submitted,

**AMERICAN NATIONAL INSURANCE COMPANY**

By its attorneys,

Karen A. Pelczarski, # #3357
Mary Cavanagh Dunn, #6712
Joseph V. Cavanagh, III, #6907
BLISH & CAVANAGH
30 Exchange Terrace
Providence, Rhode Island 02903
(401) 831-8900 (telephone)
(401) 751-7542 (facsimile)
kap@blishcavlaw.com
mcd@blishcavlaw.com
jvc3@blishcavlaw.com

[4] As referenced above, in addition to the defendant parties named herein, American National also served related subpoenas upon Charter One Auto Finance Corporation of Rochester, New York, Citizens Auto Finance – Sacramento and Great Bank. Insofar as American Nation understands RBS Citizens, N.A.'s Rhode Island office to be overseeing a joint response to those subpoenas those issued to the defendants named herein, the instant Motion seeks to compel compliance with the subpoenas issued to all five entities.

Of Counsel:

Angela Olalde, Esq.
Greer, Herz & Adams, L.L.P.
One Moody Plaza
Galveston, TX 77550
(409) 797-3200 (telephone)
(409) 766-6424 (facsimile)
aolalde@greerherz.com

Dated: August 6, 2008

**FRCP Rule 37 Certification**

I hereby certify that Mary C. Dunn, Esq. of Blish & Cavanagh, LLP, one of the attorneys for American National in the underlying litigation and the attorney who issued the subject Subpoenas conferred in good faith with counsel for RBS in an effort to secure the requested information without court action.

Mary C Dunn

**REQUEST FOR EXPEDITED ORAL ARGUMENT**

Pursuant to Local Rule 9 and 7(e), American National hereby requests an expedited oral argument on the instant Motion and estimates that twenty (20) minutes will be required for said argument.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2008, I had served a copy of the foregoing **American National Insurance Company's Motion to Compel** upon the following by first class mail:

RBS Citizens, N.A. (f/k/a Citizens Bank of Rhode Island)
c/o Mr. Brendan Halligan
Registered Agent for Service
One Citizens Drive, Legal Dept. RSD370
Riverside, RI 02915

Citizens Automobile Finance, Inc. (f/k/a Citizens Auto Finance, Inc.)
c/o Corporation Service Company
Registered Agent for Service
222 Jefferson Boulevard; Suite 200
Warwick, RI 02888

Mr. Kenneth L. Urwiller, II
Senior Vice President
Legal Department
Citizens Financial Group, Inc.
One Citizens Plaza
Providence, RI 02903

Mary CDunn